IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DARREYLL T. THOMAS,

                                              OPINION AND ORDER

        Plaintiff,

                                              16-cv-496-bbc

    v.

MEREDITH MASHAK, GWEN SCHULTZ
and JAMES GREER,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff and prisoner Darreyll Thomas is proceeding on claims under both the Eighth Amendment and common law negligence regarding an alleged failure by defendants Meredith Mashak, Gwen Schultz and James Greer to provide him needed medication. Now before the court are the parties' cross motions for summary judgment. Dkt. ##28, 43. Because I conclude that plaintiff has failed to show that any of the defendants were responsible for a delay in refilling his medication, I am granting defendants' motion and denying plaintiff's motion.

      From the parties' proposed findings of fact and the record, I find that the following facts are undisputed, unless otherwise noted.

1

UNDISPUTED FACTS

A. The Parties

At all times relevant to this case, plaintiff Darreyll Thomas was a prisoner incarcerated at the Columbia Correctional Institution, where defendant Meredith Mashak was the health services manager and defendant Gwen Schultz was a corrections unit supervisor. Defendant James Greer was the director of the Bureau of Health Services for the Department of Corrections.

B. Policies and Procedures Relating to Medication Refill and Delivery

The Department of Corrections operates Central Pharmacy Services, which provides prescription and over-the-counter medications needed by state prisoners. Each correctional facility must maintain its own tracking system to insure medications ordered from the pharmacy are received at the facility and delivered to patients. DAI Policy 500.80.06.

At Columbia Correctional Institution, there are multiple policies and practices relating to medication. Security personnel deliver medications to inmates at designated times and locations each day. At the time of medication delivery, inmates are to be shown their medication card to verify the medication delivery. If an inmate notices that the supply in the card is low, he can request a refill. Additionally, the officers on the third shift at Columbia are responsible for reviewing the "medication cards" of each inmate on their housing units to determine what controlled medications need to be refilled. If a medication needs to be refilled, the officers submit a request to the health services unit. Health services

then refills prescriptions and sends the medications to the housing unit.

### C. Plaintiff's Sertraline Medication is Not Refilled

In August 2014, plaintiff was taking Sertraline 200 mg for post traumatic stress disorder, as prescribed by his psychiatrist, Dr. Maier. Sertraline is an officer-controlled medication, meaning that plaintiff did not keep the medication in his cell. Instead, he went to a designated location each morning to take his dose.

On August 15, plaintiff reported to the designated location at the appropriate time to receive his dose of Sertraline, but he was told by the correctional officer that it was unavailable. For the next week, until August 23, 2014, plaintiff was told that his Sertraline was unavailable. Plaintiff was concerned about not receiving his medication because the Sertraline information sheet provided him warned against stopping the medication suddenly. Dkt. #47-2. Indeed, within a couple of days after stopping the medication, plaintiff began experiencing vision changes, chest tightness, sweating, panic attacks, hallucinations and suicidal thoughts.

On August 19, 2014, plaintiff submitted a health service request to defendant Mashak, the health services manager, asking that his TENS unit be recharged and stating: "[i]t has been three days since my PTSD med. (Sertraline) has been filled. I'm on 200 mg a day and these gaps *really* FUCK with my emotions. I'm doing my best to stay in line only to be screwed by those charged with my safety! Please remedy this issue. Thank you." Dkt. #36-1. Mashak received the health services request on August 22. (It is not clear from the

record why plaintiff's request was not delivered until August 22.) Mashak responded that same day, stating in pertinent part that she had "reviewed [plaintiff's] medications and do not see a pattern of late issue. If this becomes a pattern please let me know." Id.

Also on August 22, plaintiff submitted a health service request to his psychiatrist, Dr. Maier, stating that he had been out of Sertraline for six days and was having panic attacks and trouble sleeping. A health services unit nurse responded to plaintiff as follows: "Officer controlled. Needs to be ordered by CO. Medication was not discontinued." Dkt. #47-3.

Also on August 22, plaintiff submitted his own medication refill request for Sertraline. On August 23, after receiving plaintiff's request, the health services unit dispensed a 60-count medication card of Sertraline 100 mg. The Sertraline was available to plaintiff on August 24.

OPINION

Plaintiff contends that defendants violated the Eighth Amendment and state negligence law by failing to insure his access to Sertraline, thereby depriving him of necessary treatment for his post traumatic stress disorder and causing him to suffer for several days from vision changes, chest tightness, sweating, panic attacks, hallucinations and suicidal thoughts.

A. Eighth Amendment

To prevail on a claim for inadequate medical care under the Eighth Amendment,

plaintiff must show that a prison official was "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). For purposes of summary judgment, defendants concede that plaintiff's post traumatic stress disorder and need for Sertraline presented a serious medical need, so I need not address that issue. King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012). Defendants argue that plaintiff's claims fail because he cannot establish that any defendant was deliberately indifferent to his serious medical need. I address plaintiff's claims against each defendant below.

1. Defendant Schultz

According to defendant Schultz, she has no record or recollection of plaintiff ever writing or talking to her about not receiving his medication in August 2014. Schultz Decl., dkt. #35, ¶¶ 6-8. She further states that she was unaware of the issue until September 2014, when she received a related decision from the institution complaint examiner's office. Id. ¶ 8. Plaintiff has submitted no evidence to refute Schultz's recollection of events. Although plaintiff alleged in his complaint that he "informed . . . Schultz of his injury and serious health hazard multiple times," dkt. #1, ¶ 18, he has provided no evidence at summary judgment to establish (1) when he talked to Schultz about the medication, (2) what he told her about it or (3) how she responded. Without such details, the vague allegations from his

5

complaint are not enough to create a genuine dispute of material fact regarding Schultz's knowledge of plaintiff's serious medical need. Because Schultz cannot be held liable for failing to address a problem about which she was unaware, she is entitled to summary judgment. Minix v. Canarecci, 597 F.3d 824, 833-34 (7th Cir. 2010) (defendant liable under § 1983 only if he has "personally involvement" in depriving plaintiff of his constitutional rights); Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009) (same).

2. Defendant Greer

Plaintiff's claim against defendant Greer is based on the theory that Greer was deliberately indifferent by failing to enact policies and procedures to insure that medication refills occur without problems. E.g., Jones v. City of Chicago, 787 F.2d 200, 204 (7th Cir. 1986) ("[I]n situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable."). However, the undisputed facts show that there were agency-wide policies and procedures, as well as procedures for the Columbia Corrections Institution in particular, relating to medication refills. At Columbia, medications are dispensed at designated times and in designated locations. Third shift officers are responsible for reviewing the "medication cards" of each inmate and asking the health services unit for refills when necessary. Inmates may also ask for a refill if they do not receive one when needed, as happened in this case. The health services unit will dispense a refill if a request is received from an officer or an inmate.

Unfortunately, neither defendants nor plaintiff provided enough information to allow

6

me to determine why the policies and procedures did not work for plaintiff in this instance. For some unexplained reason, the third shift officers apparently failed to request a refill of plaintiff's Sertraline from the health services unit, despite knowing that it had run out. Additionally, plaintiff did not submit a refill request until he had been without his medication for four days. However, plaintiff has submitted no evidence suggesting that the delay in his Sertraline refill was caused by the lack of policy or some inherent flaw in the policy of which defendant Greer was aware or for which he was responsible. Accordingly, Greer cannot be found liable for deliberate indifference. City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989) (flawed policies or training amount to deliberate indifference only if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need").

3. Defendant Mashak

In contrast to his claims against the other two defendants, plaintiff has evidence that he notified defendant Mashak about not receiving his Sertraline prescription. In particular, plaintiff submitted a health service to Mashak dated August 19, 2014 asking about both his TENS unit and his Sertrline prescription. (It is not clear why Mashak did not receive the health services request until August 22, but plaintiff has not suggested that the delay was Mashak's fault.) Mashak's response to plaintiff was not particularly responsive. With respect to his complaint about his medication, she stated only that she had

7

"reviewed [plaintiff's] medications and d[id] not see a pattern of late issue. If this becomes a pattern please let me know." Dkt. #36-1.

Defendant Mashak states that she does not recall reading plaintiff's health services request about his medication. In fact, Mashak says she believes she "inadvertently overlooked" plaintiff's complaint regarding his unfilled medication, which was on the second page of his health services request, because she "did not address the issue and she did not sign the second page." Mashak Decl., dkt. #34, ¶ 24. She further states that if she had "seen the second page of [plaintiff's] Health Services Request regarding being out of Sertraline for three days, she would have looked into the issue at the time and requested a refill accordingly." Id. ¶ 25. However, Mashak's response to plaintiff that she had "reviewed [plaintiff's] medications and d[id] not see a pattern of late issue," suggests that Mashak did see plaintiff's complaint regarding his medication, but nonetheless failed to request a refill for plaintiff.

Even if I assume that defendant Mashak reviewed plaintiff's request and failed to request a refill for plaintiff, plaintiff's claim against Mashak must fail because he has not shown that he was harmed by Mashak's inaction. The same day that Mashak received plaintiff's request, August 22, 2014, plaintiff submitted his own medication refill request for Sertraline. The health services unit refilled plaintiff's prescription the next day, August 23. There is no evidence suggesting that Mashak could have caused plaintiff's prescription to be filled sooner. In other words, there is no evidence that plaintiff suffered any detrimental effect from Mashak's apparent inaction. Without such evidence, plaintiff cannot sustain a

deliberate indifference claim against Mashak. E.g., Jackson v. Pollion, 733 F.3d 786, 790 (7th Cir. 2013) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm."); Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996) (guard not liable for deliberate indifference if there was no "detrimental effect" from guard's refusal to obtain care for inmate).

B. State Law Negligence

Plaintiff also brings negligence claims against defendants. Defendants argues that plaintiff's negligence claims fail at the outset because he failed to strictly comply with the notice of claim requirements under Wis. Stat. § 893.92. In particular, although plaintiff sent a notice of claim to the attorney general, he submitted it via first class mail, rather than certified mail as required by the statute.

Defendants are correct. Strict compliance with Wisconsin's notice of claim statute is a jurisdictional requirement for a state law claim against a state employee. Ibrahim v. Samore, 118 Wis. 2d 720, 726, 348 N.W.2d 554, 558 (1984). See also Weinberger v. Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997) ("Section 893.82 is jurisdictional and strict compliance is required."). Additionally, the Wisconsin Supreme Court has held that the certified mail requirement must be followed. Sorenson v. Batchelder, 2016 WI 34, ¶ 46, 368 Wis. 2d 140, 160–61, 885 N.W.2d 362, 372 (affirming dismissal of action after concluding that personal service did not comply with certified mail requirement of Wis. Stat.

9

§ 893.82(5))). See also Kelly v. Reyes, 168 Wis. 2d 743, 744, 484 N.W.2d 388, 388 (Ct. App. 1992) (affirming dismissal of action where plaintiff used "regular mail, not certified mail to serve notice of his claim upon attorney general"). Therefore, plaintiff's failure to submit his notice of claim by certified mail dooms his negligence claims against defendants.

Finally, I note that even if plaintiff had complied with the notice of claim requirements, his negligence claims would fail on the merits. To prevail on a claim for negligence in Wisconsin, a plaintiff must prove that the defendants breached their duty of care and plaintiff suffered injury as a result. Paul v. Skemp, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865. As discussed above in the context of plaintiff's deliberate indifference claims, plaintiff cannot prove that (1) defendant Schultz was aware of the delay in his Sertraline refill; (2) defendant Greer was responsible for the errors that caused the delay; or (3) defendant Mashak's apparent failure to request a refill for plaintiff caused him any injury. Accordingly, plaintiff's negligence claims fail.

ORDER

IT IS ORDERED that

1. Plaintiff Darryell Thomas's motion for summary judgment, dkt.#43, is DENIED.

2. Defendants Meredith Mashak, Gwen Schultz and James Greer's motion for summary judgment, dkt. #28, is GRANTED.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 9th day of November, 2017.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge